UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

SUSAN LLOYD,                              )        CASE NO.  4:21-cv-1476
                                          )
                 Plaintiff,               )
                                          )        JUDGE BRIDGET M. BRENNAN
        v.                                )
                                          )
TIMOTHY CANNON, *et al*.,                 )        **MEMORANDUM OPINION**
                                          )        **AND ORDER**
                 Defendants.              )


        Plaintiff Susan Lloyd filed *pro se* this action alleging a violation of the First Amendment,

discrimination against a 'class of one' in violation of the Equal Protection Clause, conspiracy to

interfere with civil rights, defamation, and infliction of emotional distress against all Defendants.

        Before the Court are motions to dismiss filed by the following Defendants: Brouse

McDowell and Lisa Whitacre (Doc. No. 32); Committee to Elect Becky Doherty and Judge

Rebecca Doherty (Doc. No. 33); Judges Timothy Cannon, Cynthia Wescott Rice, and Mary Jane

Trapp (Doc. No. 34); Akron Legal News and Tracey Blair (Doc. No. 36); Jason Whitacre (Doc.

No. 37); and Judge Rice for Justice (Doc. No. 66).  Plaintiff filed motions to strike or, in the

alternative, for leave to file a second amended complaint, as well as briefs in opposition to

Defendants' motions to dismiss.  (Doc. Nos. 38, 39, 40, 42, 50, & 67.)  Also before the Court is

Plaintiff's motion for summary judgment against Akron Legal News and Tracey Blair (Doc. No.

41) and Plaintiff's motion for default judgment against Judge Rice for Justice (Doc. No. 59).

        For the reasons that follow, this Court GRANTS all Defendants' motions to dismiss,

DENIES Plaintiff's requests for leave to file a second amended complaint, and DENIES

Plaintiff's remaining motions for summary judgment, default judgment, and to strike Judge Rice

for Justice's motion to dismiss as moot.

## I.     <u>Background</u>

### A.  Factual Allegations

Plaintiff's 54-page Amended Complaint centers on accusations of foul play stemming from a dispute with her former neighbor.  That dispute was litigated previously in the Portage County Court of Common Pleas.  (*See* Doc. No. 32-2 (docket from *Lloyd v. Thornsbery*, Case No. 2016CV00230).)[1]

Many of the allegations in the Amended Complaint are not relevant to the causes of action pled against the Defendants in this federal action.  What follows, therefore, is a high-level overview of the Amended Complaint with a more detailed description of allegations that relate to this action.  The allegations are assumed to be true solely for purposes of ruling on the motions to dismiss.  The Court makes no findings on whether all of these events transpired as alleged. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (holding that judges assume "that all the allegations in the complaint are true (even if doubtful in fact).").

### 1.  The Thornsbery Litigation

In early 2016, Plaintiff purchased a house in Streetsboro, Ohio.  (Doc. No. 31 at PageID# 317.)  Her next-door neighbor was Joshua Thornsbery.  (*Id.*)  Thornsbery and Plaintiff did not get along.  (*Id.*)  Thornsbery and his friends damaged her property, threatened violence, and engaged in cyber-harassment.  (*Id.*)  Plaintiff is disabled, and Defendants and Thornsbery were

---

[1] A court may consider matters of public record in deciding a motion to dismiss without requiring that the motion be converted to one for summary judgment.  *See, e.g., Embassy Realty Invs., LLC v. City of Cleveland*, 877 F.Supp.2d 564, 570-71 (N.D. Ohio 2012); *United States of America ex rel. Dingle v. Bioport Corp.*, 270 F.Supp.2d 968, 972 (W.D. Mich. 2003) (observing that public records and government documents, including those available from reliable sources on the Internet, may be subject to judicial notice).

aware of her underlying health condition.  (*Id.* at PageID# 320.)  Plaintiff sued Thornsbery and his friends in the Portage County Court of Common Pleas in March 2016 (the "Thornsbery Litigation").  (*Id.* at PageID# 317.)

Jason Whitacre is an attorney who represented some defendants in the Thornsbery Litigation.  (Doc. No. 32-2 at PageID# 383.)[2]  Judge Rebecca Doherty was initially assigned to that case but recused herself on November 29, 2018.  (Doc. No. 31 at PageID# 317.)  That case was reassigned to Judge Thomas Pokorny.  (*Id.*)  During that contentious litigation, Jason Whitacre sought to have Plaintiff banned from using her social media accounts while the case was pending.  (*Id.* at PageID# 324.)

The Thornsbery Litigation went to trial in June 2019.  (*Id.* at PageID# 317.)  The jury found against Plaintiff on all counts.  (Doc. No. 32-3 at PageID# 426.)  Judge Pokorny sanctioned Plaintiff in the amount of $100,000 for frivolous conduct.  (Doc. No. 31 at PageID# 318; Doc. No. 32-3 at PageID# 429.)[3]

Plaintiff had been represented at trial by attorney Bradley Hull.  (Doc. No. 32-3 at PageID# 426; *see also* Doc. No. 31 at PageID# 329.)  Judge Pokorny permitted Hull to withdraw after the trial but before the court journalized the verdict.  (Doc. No. 32-3 at PageID# 426.)  Sanctions were not awarded against Hull.  (*Id.* at PageID# 427.)

### 2.  The Thornsbery Appeal

Plaintiff appealed the verdict and related orders, including the denial of her post-trial

---

[2] The Court properly considers filings and judicial opinions related to the Thornsbery Litigation and its subsequent appeal because they are attached to a motion to dismiss, referred to in the Amended Complaint, and central to Plaintiff's claims.  *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

[3] Plaintiff now says that the Portage County Court's award of sanctions was identical to the amount of Jason Whitacre's alleged outstanding debts.  (*Id.* at PageID# 318.)  Plaintiff insinuates that those are connected, though she does not allege how so.

motions, the granting of certain defendants' motions, and the sanctions award (collectively, the "Thornsbery Appeal"). (*Id.* at PageID# 317-18; *see also* Doc. No. 32-3.) Judges Timothy Cannon, Cynthia Rice, and Mary Jane Trapp of the Ohio Court of Appeals for the Eleventh District (together, the "Eleventh District Judges") presided over the Thornsbery Appeal. (*Id.*) At some point, Plaintiff posted comments on what she terms the "official government" Facebook pages of Eleventh District Judges and Judge Doherty. (*Id.* at PageID# 322-24.) Those comments were removed, and Plaintiff was blocked from those Facebook pages. (*Id.*) Committee to Elect Becky Doherty and Judge Rice for Justice (the "Candidate Committees") also removed Plaintiff's comments and blocked her from their respective Facebook pages around the same time. (*Id.*)

On January 29, 2021, the Eleventh District Judges affirmed the trial court judgment. *See Lloyd v. Thornsbery*, 11th Dist. Portage No. 2019-P-0108, 2021-Ohio-240. Plaintiff alleges that the Thornsbery Appeal opinion mirrors many of the arguments raised by Jason Whitacre in his appellate brief. (Doc. No. 31 at PageID# 317.) Thus, she asserts, the Eleventh District Judges failed to properly review the record, made factual inaccuracies, and lied about Plaintiff throughout the opinion. (*Id.* at PageID# 318-20, 330-55.) Jason Whitacre is also accused of making inaccurate statements about Plaintiff in Thornsbery Appeal filings. (*Id.* at PageID# 355.)

### 3. The Akron Legal News Article and Subsequent Fallout

On March 3, 2021, Akron Legal News published an article written by Tracey Blair entitled "Portage Cty. Woman's conduct was 'frivolous' in neighbor dispute" (the "Akron Legal News Article"). (*Id.* at PageID# 320.) The Akron Legal News Article reported on the

Thornsbery Appeal opinion.  (Doc. No. 32-4.)[4]  In doing so, Plaintiff alleges that the Akron Legal News Article was inaccurate, harmful, and evidence of a broader scheme against her.  (*Id.* at PageID# 320-21.)  She also alleges that the law firm of Brouse McDowell served as the statutory agent for Akron Legal News.  (*Id.* at PageID# 355.)  Lisa Whitacre was an attorney at Brouse McDowell and married to Jason Whitacre.  (*Id.*)  Per the Amended Complaint, Akron Legal News, Tracey Blair, Brouse McDowell, Lisa Whitacre, and Jason Whitacre were obligated to – but did not – conduct an independent factual investigation before publishing any statements about the Thornsbery Appeal.  (*Id.* at PageID# 357.)  Jason Whitacre also allegedly published "information online that was not true," which was republished by other news outlets.  (*Id.*)

Generally, Defendants all are alleged to have harmed Plaintiff in numerous ways, including forcing her to leave the state of Ohio.  (*Id.* at PageID# 327-28.)  They also caused Plaintiff to represent herself *pro se* in the Thornsbery Appeal and in this federal lawsuit.  (*Id.* at PageID# 330.)

Plaintiff requests: (a) restoration of her First Amendment rights by inclusion on official government web pages; (b) a public apology from all Defendants and their publication of the "true" facts regarding Plaintiff's litigation; (c) monetary damages in excess of $1 million; (d) training for all Defendants under the Americans with Disabilities Act; (e) an injunction against Defendants prohibiting future civil rights violations against Plaintiff; (f) a fine imposed on all Defendants for violating Plaintiff's civil rights; (g) disbarment of all those Defendants who are attorneys; (h) prosecution "of the above named individuals for their crimes against Lloyd"; (i) removal of all defamatory content; and (j) any other relief the Court sees fit, including

---

[4] The Court considers the Akron Legal News Article because it is attached to a motion to dismiss, referred to in the Amended Complaint, and central to Plaintiff's claims.  *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

declaratory relief.  (*Id.* at PageID# 363-64.)

**B.  Procedural History**

On July 29, 2021, Plaintiff initiated this lawsuit.  (Doc. No. 1.)  After several parties filed

motions to dismiss Plaintiff's initial complaint, the Court granted Plaintiff leave to file the

Amended Complaint on October 22, 2021.  (Doc. No. 30.)  Plaintiff filed her Amended

Complaint on October 25, 2021.  (Doc. No. 31.)

In November 2021: Brouse McDowell and Lisa Whitacre jointly moved to dismiss (Doc.

No. 32); Committee to Elect Becky Doherty and Judge Doherty jointly moved to dismiss (Doc.

No. 33); the Eleventh District Judges jointly moved to dismiss (Doc. No. 34); Akron Legal News

and Tracey Blair jointly moved to dismiss (Doc. No. 36); and Jason Whitacre moved to dismiss

(Doc. No. 37).

In late November 2021, Plaintiff filed several motions to strike and opposition briefs.

(Doc. Nos. 38, 39, 40, 41, & 42.)  She also sought leave to file a second amended complaint in

the alternative.  (*Id.*)  Plaintiff also moved for summary judgment against Akron Legal News and

Tracey Blair.  (Doc. Nos. 41.)

On December 6, 2021, Committee to Elect Becky Doherty and Judge Rebecca Doherty

filed their opposition to Plaintiff's motion to strike and reply in support of their motion to

dismiss.  (Doc. No. 46.)  On December 16, 2021, Akron Legal News and Tracy Blair filed an

opposition to Plaintiff's motion for summary judgment.  (Doc. No. 47.)  On December 20, 2021,

Brouse McDowell and Lisa Whitacre filed their opposition to Plaintiff's motion to strike and

reply in support of their motion to dismiss.  (Doc. No. 48.)  On January 6, 2022, Plaintiff filed a

motion to accept a late filing of her opposition to Jason Whitacre's motion to dismiss, which the

Court allowed.  (Doc. No. 52-1, 53.)  On January 10, 2022, Jason Whitacre replied in support of

his motion to dismiss.  (Doc. No. 54.)

On April 29, 2022, the Court instructed Plaintiff to show cause why Judge Rice for Justice should not be dismissed for want of prosecution.  (Doc. No. 57.)  On May 12, 2022, Plaintiff filed a motion for default judgment against Judge Rice for Justice.  (Doc. No. 59.)[5]  On May 17, 2022, counsel for Judge Rice for Justice appeared and filed an opposition to the motion for default judgment, arguing that the committee had not been served properly.  (Doc. Nos. 61, 62.)  Plaintiff replied in support of default judgment on May 24, 2022.  (Doc. No. 63.)  On June 28, 2022, Judge Rice for Justice filed a motion to dismiss.  (Doc. No. 66.)  Plaintiff filed a motion to strike Judge Rice for Justice's motion to dismiss on July 6, 2022.  (Doc. No. 67.)  On July 26, 2022, Judge Rice for Justice filed an opposition to the motion to strike and reply in support of its motion to dismiss.  (Doc. No. 68.)

II.     **Law and Analysis**

A.  **Challenges to Service of Process**

1.  **Legal Standard**

Pursuant to Rule 4, "[a] summons shall be served together with a copy of the complaint." Fed. R. Civ. P. 4(c).  The plaintiff is responsible for effectuating service of a summons within 90 days after filing the complaint and must furnish the person effecting service with the necessary copies of the summons and complaint.  *See* Fed. R. Civ. P. 4(c) & 4(m).  A defendant may waive service.  Fed. R. Civ. P. 4(d).  If the defendant does not waive service and the summons and complaint are not properly served within 90 days after the filing of the complaint, the court, upon

---

[5] The docket reflected Michael Walton as counsel of record for Judge Rice for Justice.  Mr. Walton informed the Court that he represented Judge Rice in her official capacity and has never been counsel for Judge Rice for Justice and could not be given his employment with the Office of the Ohio Attorney General.  The appearance of Mr. Walton as counsel of record for Judge Rice for Justice was an error on the docket.

motion or its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or otherwise direct that service be made within a specified time. Fed. R. Civ. P. 4(m). But if the plaintiff shows good cause for the failure to serve, then the court must extend the time for service for an appropriate period. *Id.*

Plaintiff bears the burden of exercising due diligence in perfecting service of process and showing that proper service has been made. *Habib v. General Motors Corp.*, 15 F.3d 72, 74 (6th Cir. 1994). Although federal courts generally construe rules in favor of an expedient, efficient judicial process, the requirements of Rule 4 are construed more liberally when a defendant is not prejudiced. *See Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir. 1987). Moreover, a *pro se* plaintiff is entitled to some leniency in the application of Rule 4 "to ensure that [the] case is justly resolved on the merits rather than on the basis of procedural technicalities to the extent possible." *Jacobs v. Univ. of Cincinnati*, 189 F.R.D. 510, 511 (S.D. Ohio 1999) (citing *Poulakis v. Amtrak*, 139 F.R.D. 107, 109 (N.D. Ill. 1991)).

### 2. Discussion

Judge Cannon has not filed a special appearance or moved separately to dismiss for improper service. Instead, a footnote in the Eleventh District Judges' motion argues that Judge Cannon was not properly served. (Doc. No. 34 at PageID# 473.) Because Judge Cannon was no longer a sitting judge at the Eleventh District address, he was not properly served, the footnote explains. (*Id.*) Judge Cannon joined in all other arguments in the joint motion. (*Id.*)

Judge Rice for Justice also argues that it was not properly served and seeks dismissal on that ground. (Doc. No. 66-1 at PageID# 680-81.) Apparently, service was attempted by certified mail and returned with a "C-19" designation in lieu of a signature. (*Id.*)

The docket reflects that Judge Cannon and Judge Rice for Justice were both served via

certified mail with a "C-19" designation on the receipt.  (Doc. No. 7.)  Due to the COVID-19 pandemic, the United States Postal Service implemented temporary modifications to its mail handling procedures for mail that requires customer signatures, including certified mail.  Indeed, a "C-19" designation exists on the return of service for all Defendants in this case who were served by certified mail.

The Sixth Circuit has held that "a defendant's answer and appearance in an action 'should be enough to prevent any technical error in form from invalidating the process.'" *Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir. 1987) (quoting 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1088 (Supp. 1983)).  Here, Judge Cannon and Judge Rice for Justice have appeared and filed motions to dismiss on substantive and immunity grounds.  "Rule 4 is a flexible rule which principally requires sufficient notice to the party of claims brought against it, and dismissal is not appropriate unless the party has been prejudiced." *Id.* (citation omitted).

The Court holds that these Defendants were not prejudiced by any service deficiency and will proceed to address challenges to Plaintiff's Amended Complaint.

## B.  Motions to Dismiss

### 1.  Legal Standard

When considering a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations as true.  *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The sufficiency of the complaint is tested against the notice pleading requirement that a complaint must contain "a short and plain statement of the claim showing that

the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  Although this standard is a liberal one, a complaint must still provide the defendant with "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," to state a plausible claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Facial plausibility means that the complaint contains "factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Such plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  In such a case, the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [and] complaint must be dismissed."  *Twombly*, 550 U.S. at 570; *see Iqbal*, 566 U.S. at 678.

A complaint need not set down in detail all the particulars of a plaintiff's claim. However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 566 U.S. at 678 (holding that a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  "Bare assertions," basic recitations of the elements of the cause of action, or "conclusory" allegations are not entitled to the assumption of truth and, without more, do not satisfy the Rule 8 notice standard.  *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Twombly*, 550 U.S. at 555). Factual allegations, assumed to be true, must raise the right to relief above the speculative level.  *Twombly*, 550 U.S. at 555.

The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Although this Court will not demand strict formalities and all the trimmings from a party *pro se*, the Court also will not conjure unpled facts nor will it construct causes of action.  *See Bassett*, 528 F.3d at 437.  Any complaint must give the defendants fair notice of what the plaintiff's claim is and reveal the grounds upon which it rests.  *Lillard v. Shelby Cnty. Bd. of Edn.*, 76 F.3d 716, 724 (6th Cir. 1996) (citation omitted).

### 2. Count I – First Amendment

Plaintiff alleges that all Defendants violated her First Amendment rights, but only asserts factual allegations as to some of them.  (Doc. No. 31 at PageID# 321-25.)  Specifically, Plaintiff alleges that Judge Doherty removed her comments on the "official government reelection page for Becky Doherty titled 'Reelect Judge Becky Doherty'"; Judge Cannon deleted her comments and blocked her on the "official govt page of Timothy Cannon" titled "Reelect Judge Tim Cannon, 11th District Court of Appeals"; Judge Rice deleted her comments and blocked her on the official government page of Judge Cynthia Wescott Rice titled "Judge Cynthia Rice"; and Judge Mary Jane Trapp removed Plaintiff's posts and blocked her from "official govt page" titled "Mary Jane Trapp for the 11th District Court of Appeals."  (*Id.* at PageID# 322-24.)  Plaintiff also alleges that Jason Whitacre violated her First Amendment rights by attempting to have Plaintiff blocked from using social media and assisting Thornsbery in hacking Plaintiff's account.  (*Id.* at PageID# 324-25.)  Plaintiff makes no specific factual allegations against Brouse McDowell, Lisa Whitacre, Akron Legal News, or Tracey Blair in support of this claim.

Brouse McDowell, Lisa Whitacre, the Candidate Committees, and Jason Whitacre move to dismiss Plaintiff's First Amendment claims because non-government actors cannot be liable

for a First Amendment violation.  (Doc. No. 32-1 at PageID# 373-74; Doc. No. 33-1 at PageID# 451-56; Doc. No. 37 at PageID# 507-08; Doc. No. 66-1 at PageID# 687-93.)  Brouse McDowell and Lisa Whitacre also argue that even if they were state actors, the Amended Complaint fails to allege factual allegations specific to them.  (Doc. No. 32-1 at PageID# 373-74.)  Judge Doherty and the Eleventh District Judges (collectively, the "Judicial Defendants") argue dismissal is proper because Plaintiff failed to allege that blocking or removing her comments from unofficial reelection websites constitutes state action.  (Doc. No. 33-1 at PageID# 451-56; Doc. No. 34 at PageID# 479-81.)  They also argue there are no allegations that the Eleventh District Judges themselves removed her comments or blocked her posts.  (*Id*.)  Akron Legal News and Tracey Blair argue that Plaintiff's Amended Complaint is devoid of any factual allegations with respect to a First Amendment violation against them.  (Doc. No. 36 at PageID# 496.)

Plaintiff opposed all Defendants' motions to dismiss.[6]  Plaintiff asserts that because Brouse McDowell is a law firm and Lisa Whitacre is a lawyer, they are "state actors liable under 42 U.S.C. [§] 1983 for First Amendment Violations."  (Doc. No. 40 at PageID# 543.)  Plaintiff asserts the same argument against Jason Whitacre.  (Doc. No. 50 at PageID# 617.)

Plaintiff avers that the Eleventh District Judges, Judge Doherty, and the Candidate Committees blocked and removed her comments from official government pages.  (Doc. No. 39 at PageID# 533-34; Doc. No. 38 at PageID# 520-22; Doc. No. 67 at PageID# 696.)  Plaintiff further argues that the Eleventh District Judges cannot block her for having a differing viewpoint

---

[6] Plaintiff filed multiple motions to strike in opposition to the motions to dismiss.  Brouse McDowell and Lisa Whitacre, and Judge Doherty and Committee to Elect Becky Doherty, argue that a motion to strike is procedurally improper and should be denied because Plaintiff raises no arguments to support.  (Doc. No. 48 at PageID# 598-99; Doc. No. 46 at PageID# 582-83.)  The Court agrees and treats Plaintiff's motions to strike as oppositions to the motion to dismiss.  *See Johnson v. Plastek Indus.*, No. 5:17–cv–0548, 2018 WL 1488840, at *1 (N.D. Ohio March 27, 2018) (construing motion to strike as opposition to motion to dismiss).

and that they utilized these pages for "official business and to interact with the public." (Doc. No. 39 at PageID# 534.)  Plaintiff makes the same assertions with respect to Judge Doherty. (Doc. No. 38 at PageID# 520-22.)

Plaintiff does not address Akron Legal News and Tracey Blair's contention that the Amended Complaint is devoid of any factual allegations to support a First Amendment claim against them in her opposition.  (*See* Doc. No. 42.)

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged violation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).[7] "It is undisputed that First Amendment protections are triggered only in the presence of state action." *Wilcher v. City of Akron*, 498 F.3d 516, 519 (6th Cir. 2007).  Accordingly, a private party acting on its own accord "cannot ordinarily be said to deprive a citizen of her right to Free Speech." *Id.*

Plaintiff's arguments against Brouse McDowell, Lisa Whitacre, and Jason Whitacre (the "Lawyer Defendants") hinge on her assertion that law firms and lawyers are state actors.  But law firms and lawyers acting in a private capacity are not.  *See, e.g.*, *Cicchini v. Blackwell*, 127 F. App'x 187, 190 (6th Cir. 2005) ("Lawyers are not, merely by virtue of being officers of the court, state actors for § 1983 purposes."); *Britt v. Fox*, 110 F. App'x 627, at *1 (6th Cir. 2004) (affirming dismissal of § 1983 claim against lawyer and law firm because they are not state actors); *Newsome v. Merz*, 17 F. App'x 343, 345 (6th Cir. 2001) (dismissing § 1983 claim

---

[7] Plaintiff does not refer specifically to 42 U.S.C. § 1983 in her Amended Complaint but does include it in her opposition briefs.  Given Plaintiff's *pro se* status, the Court liberally construes her Amended Complaint to invoke § 1983, which is the primary vehicle to obtain damages for violations of federal constitutional rights. *Communities for Equity v. Michigan High Sch. Athletic Ass'n*, 459 F.3d 676, 681 (6th Cir. 2006).

because "[a]s a lawyer representing a client, Turner was not a state actor").  Even drawing all inferences in Plaintiff's favor, there are no allegations that the Lawyer Defendants were acting in any role beyond that of private citizens.  Plaintiff has not pleaded a cognizable First Amendment Claim as to the Lawyer Defendants.

The same result follows for Plaintiff's First Amendment claim against the Candidate Committees.  A campaign for state office or a state judicial position is private political or quasi-political activity.  A campaign website is neither a state forum nor engaged in state action, and which does not change solely because a candidate is elected and becomes the incumbent for upcoming elections.  *See, e.g.*, *Fehrenbach v. Zeldin*, No. CV 17-5282 (JFB)(ARL), 2019 WL 1322619, at *5 (E.D.N.Y. Feb. 6, 2019) ("[Plaintiff's] January posting was made to Congressman Zeldin's campaign page, and thus, the conduct surrounding the alleged removal of the January 6 post amounts to private action"), *report and recommendation adopted*, No. 17-CV-5282, 2019 WL 1320280 (E.D.N.Y. Mar. 21, 2019).  The Candidate Committees were not acting "under color of law" when they deleted Plaintiff's comments and blocked her from the campaign Facebook page.  *Kallinen v. Newman*, 2022 WL 2834756, at *5 (S.D. Tex. July 20, 2022).

The Amended Complaint calls the Facebook pages or web pages of the Candidate Committees "official" government webpages.  That bold assertion is partly a legal conclusion, to which Plaintiff is not entitled to favorable inference.  To the extent Plaintiff asserts a fact that defies common knowledge and common sense, the Court is not obliged to abide such falsehood.  On their face, the titles of these Facebook pages indicate they are private campaign websites.  Plaintiff alleges her comments were removed and she was blocked on "Reelect Judge Tim Cannon, 11th District Court of Appeals," "Judge Cynthia Rice," "Mary Jane Trapp for 11th

District Court of Appeals," and "Re-Elect Judge Becky Doherty."[8]  While at first glance the title "Judge Cynthia Rice" might appear to be a  government page, the introduction of the website states it is "The official Facebook page to re-elect Appellate Judge Cynthia Rice 11th District Court of Appeals."

As to the Judicial Defendants, a government employee's private social media activity is not considered state action.  *See, e.g.*, *Lindke v. Freed*, 37 F.4th 1199, 1204 (6th Cir. 2022); *Campbell v. Reisch*, 986 F.3d 822, 826 (8th Cir. 2021) (finding that a Missouri state representative's Twitter page was akin to a campaign newsletter and dismissing § 1983 claim for lack of state action).  In *Lindke*, a city manager blocked a constituent from his personal Facebook page and deleted the user's comments.  *Lindke*, 37 F.4th at 1201-02.  The Sixth Circuit held that the city manager's deletion of the user's comments and blocking the user were not "state action" such that the manager could be liable under § 1983.  *Id.* at 1207.  The Sixth Circuit reasoned that a public official's personal Facebook page "neither derives from the duties of his office nor depends on his state authority."  *Id.* at 1204.

A district court in Texas recently reached the same conclusion.  *See Kallinen v. Newman*, 2022 WL 2834756 (S.D. Tex. July 20, 2022).  There, the plaintiff sued a state probate judge for deleting his comments and blocking him from the judge's campaign's Facebook page.  *Id.* at *1.  The court reasoned that the "Facebook page was a reelection campaign social media page that did not bear the trappings of an official state-run account."  *Id*. at *5.  Citing *Lindke*, the court

---

[8] The Court considers the Facebook pages because they are referred to in the Amended Complaint and central to Plaintiff's claims.  *Bassett*, 528 F.3d at 430. The Court further takes judicial notice of the Facebook pages.  *See, e.g.*, *D.M. Rottermund, Inc. v. Shiklanian*, 2021 WL 3525102, at * 3, n.2 (E.D. Mich. June 2, 2021) (taking judicial notice of Facebook page because "the facts in question are the contents of a Facebook page, and can be verified by visiting said Facebook page").

reasoned that the probate judge's official duties include issuing rulings and opinions, and therefore under the "traditional definition" of acting under the "color of state law," the Facebook campaign page was not used to conduct official judicial business.  *Id.*  Plaintiff here has not alleged any facts to support a conclusion that the Judicial Defendants used their respective campaign Facebook pages to perform official judicial duties.  Conclusory allegations that these were official government websites do not overcome this hurdle.

The same is true with respect to the Newspaper Defendants.  Although they rightly argue that the Amended Complaint does not provide factual allegations showing a plausible claim for relief against them, the claim further fails because the Newspaper Defendants are not state actors.  Indeed, the Sixth Circuit has held that reporters working for local media companies do not act under the color of law and are not state actors liable for First Amendment violations.  *See Davis v. Janczewski,* No. 01-1307, 2001 WL 1487923, at *1 (6th Cir. Nov. 7, 2001).  Newspapers are not state actors either.  *See, e.g.*, *Marshall v. Duncan*, No. 3:10CV-11-H, 2010 WL 1418736, at *2 (W.D. Ky. Apr. 6, 2010).

For all of these reasons, Count I is dismissed.

### 3.  Count II – Civil Conspiracy

Plaintiff next alleges that all Defendants conspired to harm her through the legal system in violation of 42 U.S.C. § 1985.  (Doc. No. 31 at PageID# 325-29.)  The Amended Complaint excerpts in full § 1985(2), which focuses on conspiracies to obstruct justice in court proceedings.  (*Id.* at PageID# 326.)  However, the thrust of Plaintiff's allegations also point implicitly to § 1985(3), which focuses on conspiracies to deny equal protection of the laws.  (*See id.* at PageID# 326-29.)  The Court examines this count under both subsections of § 1985.

Plaintiff alleges that the conspiracy was hatched in response to and in retaliation for

Plaintiff's First Amendment expression on social media.  (*Id.* at PageID# 327-29.)  Among the aims and intended results of the conspiracy, Plaintiff pleads that the Defendants: blocked her on social media, allowed people to threaten her, denied her equal protection of the law, and denied her a fair trial by jury.  (*Id.* at PageID# 326-29.)  She further avers that the Eleventh District Judges failed to read the briefing and transcripts supporting her appeal and instead "copied and pasted the Defense Attorneys [*sic*] motions into their opinions without looking at the evidence of the case."  (*Id.* at PageID# 327.)  Plaintiff also alleges that the amount of sanctions imposed by the trial court, and later affirmed on appeal, matches Jason Whitacre's alleged debts, which is an indication of a conspiracy to which all Defendants joined.  (*Id.* at PageID# 318.)

Plaintiff further states that all Defendants were motivated by her protected status under the ADA when they joined the conspiracy, the result of which was the loss of rights to life and property.  (*Id.* at PageID# 328.)  Plaintiff makes no specific factual assertions against Brouse McDowell, Lisa Whitacre, Judge Doherty, the Candidate Committees, or the Newspaper Defendants, but rather asserts generally that all Defendants conspired against her.

Brouse McDowell, Lisa Whitacre and the Eleventh District Judges move to dismiss Plaintiff's claim because she failed to allege that the conspiracy was motivated by race or class. (Doc. No. 32-1 at PageID# 374-76; Doc. No. 34 at PageID# 481-82.)  Similarly, Judge Doherty, the Candidate Committees, and the Newspaper Defendants assert that Plaintiff has pleaded no factual allegations with respect to the conspiracy claim to withstand a motion to dismiss.  (Doc. No. 33-1 at PageID# 456; Doc. No. 36 at PageID# 496; Doc. No. 66-1 at PageID# 693-94.) Jason Whitacre argues that Plaintiff's only allegations of conspiracy as to him relate to his submissions in the Thornsbery Litigation and Appeal.  (Doc. No. 37 at PageID# 509-10.) Without more, he argues that Plaintiff has failed to allege facts to support a conspiracy.  (*Id.*)

In her opposition to Brouse McDowell and Lisa Whitacre, Plaintiff reasserts her conclusory claim that Brouse McDowell and Lisa Whitacre are conspiring against her because she is a member of a protected class.  (Doc. No. 40 at PageID# 543.)  Plaintiff also argues there is sufficient evidence of a conspiracy because Jason and Lisa Whitacre are married.  (*Id.* at PageID# 545.)  As for the Eleventh District Judges, Plaintiffs factual allegations that they joined in conspiring against her rests on her allegation that she voiced opposition to them.  (Doc. No. 39 at PageID# 535.)

Plaintiff opposes Judge Doherty and the Committee to Elect Becky Doherty's motion on the basis that Judge Doherty recused herself from the Thornsbery Litigation, but still "conspired against" Plaintiff and because the Committee to Elect Becky Doherty blocked Plaintiff from the Facebook page.  (Doc. No. 39 at PageID# 522-23.)  Plaintiff does not counter Judge Rice for Justice's § 1985 argument.  (*See* Doc. No. 67.)

With respect to the Newspaper Defendants, Plaintiff avers that they conspired with the other Defendants "to publish a defamatory article in regards to Lloyd without even knowing the facts" and that the Newspaper Defendants "class discriminated" against her.  (Doc. No. 42 at PageID# 556.) Plaintiff's opposition to Jason Whitacre's motion to dismiss asserts a conspiracy exists that deprived her of her rights through published articles in newspapers.  (Doc. No. 50 at PageID# 617-18.)

To state a claim under § 1985(2), a plaintiff must allege that two or more persons conspired either (i) to intimidate a party, witness, or juror in *federal* judicial proceedings, or (ii) to obstruct justice in *state* courts.  *Lea v. Tracy Langston Ford, Inc.*, No. 19-5706, 2019 WL 9171095, at *4 (6th Cir. Dec. 30, 2019).  With respect to a conspiracy to obstruct justice in state courts, a plaintiff must also allege that there was "some racial, or perhaps otherwise class-based,

inviidiously discriminatory animus behind the conspirators' action." *Id.* (quoting *Alexander v. Rosen*, 804 F.3d 1203, 1207-08 (6th Cir. 2015)).

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must plead: "(1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws[,] and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen." *Lloyd v. City of Streetsboro*, 2018 WL 11298664, at *6-7 (6th Cir. Dec. 20, 2018) (quoting *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996)).  The plaintiff must also show the conspiracy was motivated by racial or other class-based animus.  *Id*.

Generally, "conspiracy claims must be pled with some degree of specificity." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). The hallmarks of a conspiracy claim are "that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury." *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019).

There does not appear to be a plausible factual allegation regarding an agreement or plan among the Defendants.   The Amended Complaint vacillates on what was 'the plan' and what was the basis for the animosity that supposedly prompted Defendants to act in concert.  At times, Plaintiff indicates that the conspiracy did not target Plaintiff because of her disability but rather because she expressed herself on social media platforms.  Plaintiff also asserts that the object of the conspiracy was to hinder Plaintiff's ability to post on social media, but elsewhere Plaintiff says that the Defendants aimed to have her lose her property or her life.  The chasm between those two objectives is so wide as to render the entire conspiracy charge implausible.  Similarly,

Plaintiff suggests that trial court judge selected the amount of sanctions against Plaintiff sufficient to pay off the personal debts of attorney Jason Whitacre.  Plaintiff does not allege that the Judicial Defendants knew of Whitacre's finances, however, or that the sanctions money (assuming *arguendo* Plaintiff ever paid it) was or would be directed to Whitacre's debts.  This is an example of Plaintiff's pleading tactic to connect conduct between disparate persons and events, with no facts that would render connections between them plausible, let alone actionable as a conspiracy.

Plaintiff never alleges when or how the Eleventh District Judges agreed or planned with the other Defendants.  In fact, Plaintiff does not allege that the three Eleventh District judges ever communicated with any other Defendant(s).  A claim that defendants conspired with one another with merely conclusory allegations that the conspiracy existed is insufficient to state a claim under 42 U.S.C. § 1985.  *See Brooks v. Am. Broadcasting Cos. Inc.*, 932 F.2d 495, 499 (6th Cir. 1991) (holding that § 1985 claim failed because "the allegations are too vague and conclusory to withstand a motion to dismiss").

There are other indicia of implausibility here.  For example, a key allegation in the Amended Complaint is that the Eleventh District Judges ruled against Lloyd in January 2021 because she criticized the Ohio judiciary and because she exercised her First Amendment rights. (Doc. No. 31 PageID# 319, 327, 329.)  But there are no allegations that make out a plausible claim that the Eleventh District Judges even knew of Plaintiff's criticism of Judge Doherty, much less predicated their ruling upon it.  Plaintiff alleges that she made a post on a committee webpage to reelect Portage County Judge Becky Doherty on August 17, 2020, which was removed within minutes, after which Plaintiff was blocked from posting again.  It is implausible to suggest that a stray post on a campaign committee website that lived on the internet for only a

few minutes either (a) was known to the Eleventh District judges or (b) caused them to rule against Plaintiff or (c) caused them to join a grand conspiracy.

In any event, the Sixth Circuit has made clear that § 1985 does not reach a conspiracy claim predicated upon disability-based animus. *See Oliver v. Lexington Fayette Urban Cnty. Gov.*, 2020 WL 7346025, at *3 (6th Cir. 2020); *see also Post v. Trinity Health-Michigan*, 44 F.4th 572, 581 (6th Cir. 2022) (declining to overrule precedent to extend 42 U.S.C. § 1985(3) to disability discrimination and dismissing claim premised on disability-based animus). Plaintiff alleges that this purported conspiracy, and the acts in furtherance of it, were motivated by her status as a disabled person. (Doc. No. 31 PageID# 328.) So even if Plaintiff's factual allegations were sufficient to plausibly state a claim, her assertion that the conspiracy targeted her because of her disability dooms it.

For all of these reasons, Count II is dismissed.

### 4. Count III – Defamation

Plaintiff's defamation claim centers largely on statements made in connection with the Thornsbery Litigation and Appeal and subsequent news coverage. The Amended Complaint includes nearly 25 pages of allegations of defamatory statements in the Thornsbery Appeal opinion written by the Eleventh District Judges. (Doc. No. 31 at PageID# 330-55.) Plaintiff asserts Jason Whitacre defamed her by including statements in motions he submitted as Thornsbery's counsel in the Thornsbery Litigation and Appeal. (*Id.* at PageID# 355.) She also ascribes defamation liability to him because these statements were later published online by a third-party. (*Id.* at PageID# 355-58.) Plaintiff alleges the Newspaper Defendants defamed her by publishing the Akron Legal News Article reporting on the Thornsbery Appeal. (*Id.*)

Plaintiff also alleges that Brouse McDowell is liable for defamation because she claims

that it served as Akron Legal News' statutory agent.  (*Id*. at PageID# 355.)   And Lisa Whitacre, by virtue of being married to Jason Whitacre and an attorney at Brouse McDowell, is purportedly liable for defamatory statements she neither made nor published.  (*Id*.)  Plaintiff does not allege that the Candidate Committees made any specific defamatory statements.

Brouse McDowell and Lisa Whitacre seek dismissal of this claim because Plaintiff does not allege that either Brouse McDowell or Lisa Whitacre made any defamatory statement.  (Doc. No. 32-1 at PageID# 376-77.)  They also point out that Brouse McDowell was not the statutory agent and, even if it was, that does not make them liable for defamatory statements they neither made nor republished.  (*Id*. at PageID# 378)

Judge Doherty and the Candidate Committees argue Plaintiff's defamation claim should be dismissed because Plaintiff alleges no facts to support that they said or republished any defamatory statement.  (Doc. No. 33-1 at PageID# 457; Doc. No. 66-1 at PageID# 693-94.)  The Newspaper Defendants argue that the defamation claim fails as to them because the "article in question clearly reported on a decision of the Court, nothing more."  (*Id.* at PageID# 496-97.)  They further assert that the Akron Legal News Article drew no conclusions, offered no commentary, and "was made up of actual quotations of the opinion."  (*Id*. at PageID# 492.)

Jason Whitacre contends that the defamation claim against him must be dismissed under the litigation privilege because "a claim alleging that a defamatory statement was made in a written pleading does not state a cause of action where the allegedly defamatory statement bears some reasonable relation to the judicial proceeding in which [it] appears."  (Doc. No. 37 at PageID# 510-12 (citing *Ehrlich v. Kovack*, 135 F. Supp. 3d 638, 673 (N.D. Ohio 2015)).)  Jason Whitacre also argues that Plaintiff's Amended Complaint is no more than conclusory statements without operative facts.  (Doc. No. 37 at PageID# 512.)  The Eleventh District Judges similarly

argue they are entitled to the litigation privilege.  (Doc. No. 34 at PageID# 485-86.)

In her opposition to Brouse McDowell and Lisa Whitacre's motion to dismiss, Plaintiff argues that they were agents for Akron Legal News and had an obligation to make sure the Akron Legal News Article was truthful.  (Doc. No. 40 at PageID# 543.)

In opposition to Committee to Elect Becky Doherty's motion to dismiss, Plaintiff argues that all Defendants made defamatory statements against Plaintiff.  (Doc. No. 38 at PageID# 523.) Plaintiff does not appear to oppose Judge Rice for Justice's argument.  (*See* Doc. No. 67.)

With respect to the Newspaper Defendants, Plaintiff argues that they conceded lack of knowledge of the Thornsbery Litigation and Appeal, thereby admitting fault.  (Doc. No. 42 at PageID# 556-58.)  She also argues that these Defendants should have been aware of their obligations to conduct research prior to publishing an article.  (*Id.*)

In response to Jason Whitacre, Plaintiff asserts that he purportedly committed perjury in the underlying state cases and made defamatory statements against her that were published online.  (Doc. No. 50 at PageID# 618.)  The Eleventh District Judges, she boldly states, made defamatory statements and caused her injury.  (Doc. No. 39 at PageID# 535-36.)

### a.  Insufficient Allegations

To establish a defamation claim, a plaintiff must show that: (a) a false statement of fact was made, (b) the statement was defamatory, (c) the statement was published, (d) the plaintiff suffered injury as a proximate result of the publication, and (e) the defendant acted with the requisite degree of fault in publishing the statement.  *Susan B. Anthony List v. Driehaus*, 779 F.3d 628, 632-33 (6th Cir. 2015).  "If a reasonable reader, reading a statement in the context of the entire publication, would interpret the statement as defamatory, then the plaintiff has an actionable claim."  *Croce v. New York Times Co.*, 930 F.3d 787, 792-93 (6th Cir. 2019).

As a threshold matter, Plaintiff has not established that a "false statement of fact was made." *Susan B. Anthony List*, 779 F.3d at 632-33.  Under Ohio law, a false statement is one "that sets forth matters which are not true or statements without grounds in truth or fact.  A statement is not a false statement if, even though it is misleading and fails to disclose all relevant facts, the statement has some truth in it.  Moreover, a statement that is subject to different interpretations is not false."  *Id.* at 633 (quotation and citation omitted).  "[T]ruth is a complete defense [to a defamation claim] even if the words could be construed as defamatory."  *Bukowski v. Hall*, 165 F. Supp. 2d 674, 678 (N.D. Ohio 2001) (citing *Kilroy v. Lebanon Correctional Inst.*, 61 Ohio Misc.2d 156, 161 (1991)).

Plaintiff has not alleged that Brouse McDowell, Lisa Whitacre, Judge Doherty or the Candidate Committees made any defamatory statements.  Even drawing all inferences in her favor, the lack of factual allegations of a false statement means that Plaintiff's defamation claim fails.  *See Iqbal*, 556 U.S. at 678 (finding the pleading standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  Plaintiff's allegation that Jason Whitacre published defamatory statements online also fails because there is no content or context as to what the statements were.  *Gilreath v. Plumbers, Pipefitters, & Serv. Technicians Loc. 502*, 2010 WL 6423321, at *5 (S.D. Ohio Aug. 30, 2010) (finding "the *complaint* must contain a short and plain statement showing plaintiff is entitled to relief such that defendant . . . is given fair notice of the factual basis for plaintiff's defamation claim." (emphasis in original)), *report and recommendation adopted,* No. 1:09-CV-628, 2011 WL 1288125 (S.D. Ohio Mar. 31, 2011).

As for the Newspaper Defendants, the allegations do not show that a "false statement of fact was made."  *Susan B. Anthony List*, 779 F.3d at 632-33.  The Akron Legal News Article was nothing more than a report of the Court of Appeals' publicly available opinion.  Plaintiff has not

alleged that the Akron Legal News Article misreported on the Thornsbery Appeal.  Nor could she because the Akron Legal News Article merely restates the Eleventh District Judges' holdings.  A "reasonable reader, reading a statement in the context of the entire publication," would not interpret the article as defamatory, and therefore Plaintiff does not have an actionable claim.  *Croce*, 930 F.3d at 792-93.

### b.  Litigation Privilege

 "The litigation privilege provides absolute immunity to parties, witnesses, lawyers, and judges from future lawsuits for statements made during and relevant to judicial proceedings".  *Reister v. Gardner*, 164 Ohio St.3d 546, 548, 2020-Ohio-5484 (citing *Surace v. Wuliger*, 25 Ohio St.3d 229, 233, (1986)).  Under *Surace*, statements made in the context of a proceeding are absolutely privileged if they bear "some reasonable relation to the judicial proceeding."  *Surace*, 495 N.E.2d at 940, syllabus.  The privilege applies to defamation claims.  *See Simpson v. Voiture Nationale La Societe Des Quarante Hommes*, 2nd Dist. Montgomery No. 29016, 2021-Ohio-2131.

Jason Whitacre and the Eleventh District Judges' statements were made in the course of and in relation to the underlying litigation.  Plaintiff does not allege differently. The litigation privilege bars the defamation claims against them.

### c.  Statutory Agent

Brouse McDowell argues that Plaintiff's allegations against the firm falsely claim the firm served as the statutory agent for Akron Legal News.  (Doc. No. 32-1 at PageID# 378.)  This allegation does not include any factual support.  Brouse McDowell states that it has never been the statutory agent for Akron Legal News.  (*Id.*)  In support, it attaches the Ohio Secretary of

State records that simply reflect a "B & McD, Inc." as the agent.  (*Id.*)[9]  Additionally, even if B & McD, Inc. were the same entity as Brouse McDowell, L.P.A., it argues a party's actions cannot be imputed to their statutory agent because an agent is merely "a medium for transmitting . . . papers."  (*Id.* (citing *Corwin v. State Farm Fire & Cas. Co.*, No. 3:18-cv-00740, 2018 WL 6620081 (M.D. Tenn. Dec. 19, 2018)).

The Court makes no finding as to whether "B & McD, Inc." and Brouse McDowell, L.P.A. may be the same entity.  There is no need.  Plaintiff's defamation theory as to Brouse McDowell hinges on her assertion that it served as Akron Legal News' agent.  This is of no legal consequence.  A statutory agent for service of process, without any allegation of wrongdoing, cannot be liable for actions of another simply because it served as registered agent.  *See Hahn v. Star Bank*, 190 F.3d 708, 714 (6th Cir. 1999).  In *Hahn*, the Sixth Circuit affirmed the dismissal of a statutory agent because he "was named solely because he was the statutory agent for service of process on [defendant], which is wholly insufficient to state a claim upon which relief can be granted."  *Id.*  The same is true here.

For all of the reasons stated, Count III is dismissed.

### 5.  Count IV – Equal Protection

Plaintiff asserts a "class of one" challenge that she has been "intentionally treated different by all Defendants and there is no rational basis for that difference in treatment."  (*Id.* at PageID# 358-60.)  In support of her allegation, Plaintiff alleges she was not afforded equal protection under the law because the Eleventh District Judges denied her appeal and because

---

[9] The Court takes judicial notice of the Ohio Secretary of State's Office filing reflecting Akron Legal News' statutory agent.  *See Ohio ex rel. Dewine v. Superior Fibers, Inc.*, No. 2:14-cv-1843, 2017 WL 6055159 at *5, n.1 (S.D. Ohio Dec. 7, 2017) (finding that the Court "may take judicial notice of the Ohio Secretary of State's identification of a corporation's statutory agent").

Defendants have allowed the activity underlying the Thornsbery Litigation to occur. (*Id.*)

The Lawyer Defendants and the Newspaper Defendants move to dismiss the equal protection claim because they are not state actors and therefore cannot be liable for an equal protection violation. (Doc. No. 32-1 at PageID# 378-79; Doc. No. 36 at PageID# 497; Doc. No. 37 at PageID# 512-14.) The Judicial Defendants and the Candidate Committees assert that Plaintiff's Amended Complaint does not contain specific factual allegations – and instead only conclusory allegations – to support this claim. (Doc. No. 33-1 at PageID# 457-59; Doc. No. 34 at PageID# 482.)

Plaintiff argues that Brouse McDowell's status as a law firm and Lisa Whitacre's status as a lawyer makes them state actors. (Doc. No. 40 at PageID# 543.) Plaintiff also asserts that she was treated differently in violation of the Equal Protection Clause because, to assume otherwise, would result in defamatory articles posted about everyone. (*Id.* at PageID# 544-45.)

In opposition to the Newspaper Defendants, Plaintiff argues she has alleged sufficient facts to assert a "class of one" violation of the Equal Protection Clause because they admitted to publishing the Akron Legal News Article without knowing all the underlying facts of the Thornsbery Appeal, thereby intentionally treating her differently. (Doc. No. 42 at PageID# 558.)

In response to Jason Whitacre, she claims to satisfy the pleading requirement because she alleges no rational basis for the difference in her treatment. (Doc. No. 50 at PageID# 619.) TO her, Jason Whitacre's representation of Thornsbery and his friends demonstrates such discrimination. (Doc. No. 50 at PageID# 619.)

Plaintiff asserts that the Judicial Defendants and the Committee to Elect Becky Doherty discriminated against her by blocking her from these Facebook pages.  (Doc. No. 38 at PageID# 523-24; Doc. No. 39 at PageID# 536-37.)  She also asserts that the Eleventh District Judges lacked a rational basis for their opinion.  (*Id.*)  Plaintiff does not appear to counter Judge Rice for Justice's argument that the complaint lacks factual allegations specific to it.  (*See* Doc. No. 67.)

### a.  Lack of State Action

The Equal Protection Clause safeguards against the disparate treatment of similarly situated individuals by government actors that "either burdens a fundamental right, targets a suspect class, or has no rational basis."  *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365, 379 (6th Cir. 2011) (citation and quotation omitted).  "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis."  *Id.*

To state a "class of one" violation of the Equal Protection Clause, a plaintiff must allege "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).  Notably, without a sufficient allegation that a government actor discriminated against her, a "class of one" equal protection claim fails.  *See Johnson v. Morales*, 946 F.3d 911, 939 (6th Cir. 2020).

As discussed, *supra*, lawyers and law firms typically are not state actors.  *Britt*, 110 F. App'x 627, at *1.  Plaintiff has no plausible equal protection claim against the Lawyer Defendants.  Reporters working for local media companies and the companies themselves also are not state actors.  *See Davis*, 2001 WL 1487923, at *1; *Marshall*, 2010 WL 1418736, at *2.

Plaintiff has no plausible equal protection claim against the Newspaper Defendants.

### b.  Insufficient Allegations

Plaintiff's allegations against the only state actors – the Judicial Defendants – are wholly conclusory.  To succeed here, a plaintiff must allege either (a) disparate treatment from similarly situated individuals and that the government actors had no rational basis for the difference or (b) that the challenged government action was motivated by animus or ill-will.  *Paterek v. Vill. of Armada, Michigan*, 801 F.3d 630, 650 (6th Cir. 2015).  "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"  *Id.* (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).  "A 'class of one' plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by negati[ing] every conceivable basis which might support the government action or by demonstrating that the challenged government action was motivated by animus or ill-will."  *See Johnson*, 946 F.3d at 939 (quoting *Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005)).

Plaintiff simply alleges that she "has been intentionally treated different by all Defendants and there is no rational basis for that difference in treatment."  (Doc. No. 31 at PageID# 358.)  Nothing more.  This statement is a legal conclusion, not a factual allegation.  She also fails to identify any similarly situated individual who was treated differently.  Plaintiff's Amended Complaint is wholly devoid of facts suggesting that the Judicial Defendants' actions lacked any rational basis.

Plaintiff further alleged no conduct made by the Candidate Committees to support her "class of one" allegation.  In any event, an Equal Protection Clause violation requires state action.  *See Johnson*, 946 F.3d at 939.  Besides Plaintiff's conclusory allegation that she was blocked and had her comments removed from official government websites, she pleads no

allegations to infer that the Candidate Committees' actions amounted to state action.  Again, these are webpages operated by committees to support candidates, on which no official government business occurs.  Without facts to support her allegations, the Court dismisses Plaintiff's equal protection claims against the Candidate Committees.  *See Iqbal*, 556 U.S. at 678.

For all of these reasons, Count IV is dismissed.

### 6. Count V – Emotional Distress

In Count V, Plaintiff alleges that Defendants have negligently and intentionally caused emotional distress.  (*Id.* at PageID# 360-63.)[10]  Plaintiff alleges that all Defendants were aware of her existing health issues.  (*Id.*)  The alleged conduct exacerbated her underlying health conditions.  (*Id.*)  She further argues that "Defendants have a long history of forcing litigants to pay their abusers money" and that their conduct is "extreme and goes beyond any human decency whatsoever."  (*Id.* at PageID# 362.)  These general allegations are not directed toward any specific Defendant.

All Defendants move to dismiss Plaintiff's emotional distress claims because Plaintiff failed to allege facts in support of the elements of emotional distress.  (Doc. No. 32-1 at PageID# 379-80; Doc. No. 33-1 at PageID# 459-60; Doc. No. 34 at PageID# 486-87; Doc. No. 36 at PageID# 498; Doc. No. 37 at PageID# 514-15; Doc. No. 66-1 at PageID# 639-94.)

In opposition to Brouse McDowell and Lisa Whitacre's motion to dismiss, Plaintiff argues that her Amended Complaint clearly states that she fears for her safety and has suffered

---

[10] Plaintiff's Amended Complaint cites to Pennsylvania law for the elements of negligent and intentional infliction of emotional distress.  The Court applies Ohio law.  *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999) ("A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction.").

emotional distress.  (Doc. No. 40 at PageID# 545.)

Plaintiff asserts that the Judicial Candidates and Committee to Elect Becky Doherty's blocking Plaintiff from Facebook pages was extreme and outrageous.  (Doc. No. 38 at PageID# 524-25; Doc No. 39 at PageID# 537-38.)  Plaintiff does not appear to oppose Judge Rice for Justice's arguments.  (*See* Doc. No. 67.)

As to the Newspaper Defendants, Plaintiff argues she has pleaded enough facts for emotional distress because she states that their behavior was "extreme, outrageous, intentional, reckless."  (Doc. No. 42 at PageID# 556-59.)  The Akron Legal News Article caused her severe distress.  (Doc. No. 42 at PageID# 558-59.)  Plaintiff makes similar arguments in opposition to the Eleventh District Judges and Jason Whitacre.  (Doc. No. 50 at PageID# 620.)

### a.  Negligent Infliction of Emotional Distress

The elements of negligent infliction of emotional distress are: (a) the plaintiff witnessed and/or experienced a real or impending danger to another, (b) the defendant's conduct negligently caused the dangerous incident, and (c) the defendant's conduct was the proximate cause of plaintiff's serious and reasonably foreseeable emotional distress.  *See, e.g.*, *Williams v. OmniSource Corp.*, 2018 WL 340154, at *9 (N.D. Ohio Jan. 9, 2018).

Even drawing all reasonable inferences in Plaintiff's favor, the Amended Complaint does not allege that Plaintiff witnessed or experienced a dangerous incident resulting in real or impending danger to another.  *See Iqbal*, 556 U.S. at 678 (finding "naked assertion[s] devoid of further factual enhancement" and "mere conclusory statements" insufficient to survive a motion to dismiss for failure to state a claim (citation and quotation omitted)).  Nor does her Amended Complaint allege that any Defendant caused such a dangerous incident.  Plaintiff fails to state a claim for negligent infliction of emotional distress as to any Defendants.

**b.  Intentional Infliction of Emotional Distress**

The elements of intentional infliction of emotional distress are: (a) the defendant intended to cause serious emotional distress, (b) the defendant's conduct was extreme and outrageous, and (c) the defendant's conduct was the proximate cause of Plaintiff's serious emotional distress. *Williams*, 2018 WL 340154, at *9.

Plaintiff's Amended Complaint does not allege that Defendants engaged in extreme or outrageous conduct.  At best, she alleges that Thornsbery and his friends may have engaged in extreme or outrageous conduct.  They are not party to this lawsuit.[11]  Whatever concerns Plaintiff may have about Thornsbery or the merits of that litigation, Plaintiff's barebone assertions that *these* Defendants caused her emotional distress is insufficient to state a claim.  *See Hahn*, 190 F.3d at 718 (affirming dismissal of emotional distress claim where plaintiff's complaint only alleged "the actions of the Defendants . . . have caused emotional distress, pain, suffering and damages to the Plaintiffs" and did not allege "that the actions of the defendants were outrageous, or that the resulting emotional distress to the [plaintiffs] was severe.").

For all of these reasons, Count V is dismissed.

**7.  Immunity for Judicial Defendants**

Even though this Court has found that all claims fail as a matter of law, the Court further finds that the Judicial Defendants are protected by immunity for all claims asserted against them in their official capacities and for monetary claims asserted against them in their individual capacities that relate to judicial actions.

---

[11] Plaintiff's Amended Complaint baselessly alleges that Jason Whitacre and Thornsbery together committed crimes against her.  (*See* Doc. No. 31 at PageID# 325.)  However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan*, 478 U.S. at 286.  Without more, this is insufficient to overcome dismissal.

The Judicial Defendants assert immunity under the Eleventh Amendment to the United States Constitution from claims brought against them in their official capacities. (Doc. No. 33 at PageID# 461-65; Doc. No. 34 at PageID# 476-79.) They argue that Ohio has not consented to the lawsuit, and Congress has not abrogated immunity, thus barring state law claims. They further assert that the *Ex parte Young* exception does not apply here, given the nature of Plaintiff's claims and relief sought. The Judicial Defendants also invoke judicial immunity from money damages for claims brought against them in their individual capacities.

In response, Plaintiff argues that the Eleventh District Judges are not immune from lawsuits alleging civil rights violations. (Doc. No. 39 at PageID# 538.) With respect to Judge Doherty, Plaintiff argues that judges can be sued in their judicial capacities and that a judge, as a state actor, is not vested with sovereign immunity traditionally reserved for states. (Doc. No. 38 at PageID# 520.) Plaintiff does not address the Judicial Defendants' arguments focused on the type of relief sought.

The Court concludes that Eleventh Amendment immunity bars claims brought against the Judicial Defendants in their official capacities. The Court further holds that judicial immunity bars claims for money damages brought against the Judicial Defendants in their individual capacities.

### a. Eleventh Amendment Immunity

The Eleventh Amendment "bars all suits, whether for injunctive, declaratory, or monetary relief" brought by individuals in a federal court against a state or its officials in their official capacity. *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (quotation omitted). This is so because "neither a State nor its officials acting in their official capacity are 'persons'" as that term is defined in § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Officials are persons, to be sure, but a suit brought against an official acting in his "official capacity" is a suit against that state office.  *Id.*  The Eleventh Amendment also bars a federal court from hearing state-law claims brought against state officials in their official capacity.  *Otte v. Kasich (In re Ohio Execution Protocol Litig.)*, 709 F. App'x 779, 782 (6th Cir. 2017) (finding a claim that "state officials violated the state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.") (citation and quotation omitted).  "A state court is an arm of the state, entitled to Eleventh Amendment immunity." *Howard v. Commonwealth of Virginia*, 8 F. App'x 318, 319 (6th Cir. 2001).

Eleventh Amendment immunity bars *federal* claims in federal courts against state officials unless: (a) the State has consented to suit; (b) the exception first set forth in *Ex parte Young*, 209 U.S. 123 (1908), applies; or (c) Congress has properly abrogated a State's immunity. *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008).  Similarly, Eleventh Amendment Immunity bars *state* law claims against state officials "absent explicit state waiver of the federal court immunity found in the Eleventh Amendment."  *McCormick*, 683 F.3d at 664 (citing *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 520-21 (6th Cir. 2007)).

The exceptions do not apply to this case.  First, Ohio has not consented to this lawsuit. Consent may occur in a number of ways.  It is true that a state may waive immunity either expressly or implicitly by its deeds, such as by voluntarily appearing and defending a lawsuit on the merits or agreeing to administer a federal-state program that imposes certain standards upon the state.  *Lawson v. Shelby County, TN*, 211 F.3d 331, 334 (6th Cir. 2000).  Filing a motion to dismiss and invoking immunity at the outset is no such waiver, however.[12]  Thus, no consent has

---

[12] Voluntarily appearing and defending on the merits for purpose of consenting to suit means that the state "made itself a party to the litigation to the full extent required for complete determination."  *Clark v. Barnard*, 108 U.S. 436, 448 (1883).  The motion to dismiss here, which

been given by the state of Ohio to satisfy this first exception to the Eleventh Amendment bar.

Second, Congress has not abrogated immunity.  For Congressional abrogation of immunity to be valid, two conditions must be satisfied.  First, Congress must state clearly that it intends a statute to abrogate state sovereign immunity.  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996).  Second, Congress must act "pursuant to a valid exercise of power."  *Id.*  No clear statement of intent to abrogate applies here.  *See Quern v. Jordan*, 440 U.S. 332, 345 (1979) (finding no clear statement of intent to abrogate under 42 U.S.C. § 1983); *McCormick*, 693 F.3d 654 (finding "Congress has not abrogated the Eleventh Amendment for state law claims") (citation omitted).  Plaintiff's state law claims against the Judicial Defendants in their official capacities are therefore barred by Eleventh Amendment Immunity.  Plaintiff's only possible means of avoiding immunity for federal law claims remains showing that the third exception under *Ex parte Young* applies.  It does not.

To advance claims under *Ex parte Young*, a plaintiff must allege "an ongoing violation of federal law and seek relief properly characterized as prospective."  *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 281 (1997).  The relief sought must be "prospective in nature and designed to ensure future compliance with federal law."  *Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir. 2016) (citing *Ex parte Young*, 209 U.S. at 155-56 & *Edelman v. Jordan*, 415 U.S. 651, 666-69 (1974)).  "The idea behind this exception is that a suit against a state officer is not a suit against the state when the remedy sought is an injunction against an illegal action, for an officer is not

---

hinges on immunity and failure to state a claim, does not amount to "appearing without objection and defending [the suit] on the merits" to waive immunity.  *Ku v. State of Tennessee*, 322 F.3d 431, 435 (6th Cir. 2003) (finding state consented to suit where it "engaged in extensive discovery and then invited the district court to enter judgment on the merits".)  Appearance in a court to present defenses is not a defense on the merits.  *Boler v. Early*, 865 F. 3d 391, 411 (6th Cir. 2017) (citation omitted).

acting on behalf of the state when he acts illegally." *Lawson*, 211 F.3d at 335.

Plaintiff seeks monetary damages and various forms of injunctive relief against the Judicial Defendants.  (*See* Doc. No. 31 at PageID# 363-64.)  The *Ex parte Young* exception does not apply to requests for monetary relief because that would "impose a liability which must be paid from public funds in the state treasury." *MacDonald v. Village of Northport, Mich.*, 164 F.3d 964, 970 (6th Cir. 1999) (citation and quotation omitted).  A plaintiff is not entitled to injunctive relief under § 1983 against a judicial officer "without first seeking a declaratory judgment," unless declaratory relief is unavailable.  *See* 42 U.S.C. § 1983 (forbidding injunctive relief "unless a declaratory decree was violated or declaratory relief was unavailable"); *see also Ward v. City of Norwalk*, 640 F. App'x 462, 467 (6th Cir. 2016).  Plaintiff's Amended Complaint does not allege that a declaratory decree was violated or that such declaratory relief was unavailable.  *Smiles v. Royster*, 2018 WL 4998196, at *3 (6th Cir. Oct. 1, 2018) (affirming dismissal where complaint did not allege a declaratory decree was violated or relief was unavailable).  Accordingly, the Eleventh Amendment bars all federal claims brought against the Judicial Defendants in their official capacities.

Even if Plaintiff could seek injunctive relief, the relief she seeks is not properly before this court.  The "thrust" of Plaintiff's Amended Complaint seeks redress for past harms. *S&M Brands*, 527 F.3d at 510.  Thus, the remedies Plaintiff seeks are retrospective and monetary in nature, for which *Ex parte Young* opens no federal courthouse doors. *Id.*  Accordingly, a claim for monetary relief against the Judicial Defendants are barred by immunity and are therefore dismissed.

For the following reasons, to the extent that the request(s) for injunctive relief are prospective and directed to the Judicial Defendants, such relief is not properly tailored to the

claims asserted or a cognizable remedy:

- A court cannot order a party to apologize.  *Thompson v. Sholar*, No. 5:19-CV-P197-TBR, 2020 WL 1452365, at *3 (W.D. Ky. Mar. 25, 2020) ("With regard to Plaintiff's request that the Court order that an apology be issued, despite their broad and flexible equitable powers, federal courts are not commissioned to run around getting apologies." (citation and quotation marks omitted)) (collecting cases).

- Broad-sweeping orders to obey the law are not generally a remedy recognized by courts.  *Perez v. Ohio Bell Tel. Co*., 655 F. App'x 404, 410-11 (6th Cir. 2016) ("The prohibition on overbroad or vague injunctions is deeply rooted in equity. The Supreme Court has warned against 'sweeping injunction[s] to obey the law' and has cautioned courts about their 'duty to avoid' such orders." (quoting *Swift & Co. v. United States*, 196 U.S. 375, 401 (1905)); *see also id.* at 411 (collecting cases showing that "[m]ost of the circuits that have addressed" "requests for injunctions that compel nothing more than obedience to existing law" "have adopted a rule against them").

- This Court cannot issue an injunction prohibiting an attorney from practicing law because it is well established that the States, not federal courts, "prescribe the qualifications for admission to practice and the standards of professional conduct" as well as be "responsible for the discipline of lawyers."  *Leis v. Flynt*, 439 U.S. 438, 442 (1979).  In Ohio, for example, the Ohio Supreme Court has exclusive authority to regulate the practice of law, including determining which individuals qualify for the practice of law and disciplining those lawyers admitted to practice law in the state.  OHIO CONST. Article IV, Section 2(B)(1)(g).  The Court, therefore, cannot issue an injunction that would prohibit the Lawyer Defendants from practicing law in all courts located in Ohio.

- Courts do not have authority to launch criminal investigations, file criminal charges, or direct a prosecutor to file charges.  *Viola v. Ohio Att'y Gen*., No. 1:20CV765, 2021 WL 510746, at *28 (N.D. Ohio Feb. 11, 2021); *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("In our system . . . the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion.")

As for the rest of Plaintiff's requested injunctive relief, the Amended Complaint does not

allege any facts suggesting that monetary relief is insufficient to address any alleged harms.

Before a court can grant an injunction, the plaintiff must show that, among other things, "that

remedies available at law, such as monetary damages, are inadequate to compensate for [her]

injury." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiff also does not

explain how these injunctions are narrowly drawn to specifically address any of the alleged

violations of law. The Sixth Circuit has noted that injunctions and other forms of equitable relief

are "extraordinary" remedies that should be "cautiously granted" and "the scope of relief should

be strictly tailored to accomplish only that which the situation specifically requires and which

cannot be attained through legal remedy." *Aluminum Workers Int'l Union, AFL-CIO, Loc.

Union No. 215 v. Consol. Aluminum Corp.*, 696 F.2d 437, 446 (6th Cir. 1982).[13]

 Accordingly, the Judicial Defendants are entitled to Eleventh Amendment immunity

from claims in their official capacities.

### b. Judicial Immunity

 Generally, judges are entitled to judicial immunity for money damages for all actions

taken in their judicial capacity – even if the claims are brought against them in their individual

capacity. *Mireles v. Waco*, 502 U.S. 9, 9 (1983); *see also Jones v. Commonwealth*, 2019 WL

2483276, at *1 (6th Cir. Jan. 3, 2019). The narrow exceptions to judicial immunity are claims

seeking monetary damages against a judge's nonjudicial actions (those taken outside of the

judge's judicial capacity) or actions performed without jurisdiction. *Bright v. Gallia County,

Ohio*, 753 F.3d 639, 649, 660 (6th Cir. 2014) (finding immunity in § 1983 case where although

the judge's behavior was unethical, the conduct at issue was within the scope of his judicial

capacity). Accordingly, judicial immunity bars all claims brought against the Judicial

Defendants unless a claim is either (a) for non-monetary relief or (b) for actions performed

---

[13] Plaintiff's Amended Complaint does generally seek any other relief this Court sees fit,
"including declaratory relief against all parties." (Doc. No. 31 at PageID# 364.) As an initial
matter, Plaintiff does not articulate what she seeks this Court to declare. Moreover, because her
claims fail as a matter of law, the Court's immunity analysis is not impacted by that remedy.

outside the judges' official capacity or jurisdiction.

As discussed *supra*, Plaintiff's claims seeking non-monetary relief are non-cognizable. With the exception of the alleged First Amendment violation, all of the claims against all of the Judicial Defendants for all monetary or retrospective relief all arose from the Judicial Defendants' conduct performed in their judicial capacity.  As such, the doctrine of judicial immunity bars all of those claims for monetary relief or damages that relate to actions performed in the Judicial Defendants' judicial capacities.

Accordingly, to the extent Plaintiff's Amended Complaint seeks money damages against the Judicial Defendants for actions performed in their judicial capacities, the Judicial Defendants are entitled to judicial immunity.

### C.  Leave to File a Second Amended Complaint

In opposition briefs to Defendants' motions to dismiss, Plaintiff requests leave to file a second amended complaint.[14]  (*See* Doc. No. 38 at PageID# 526; Doc. No. 39 at PageID# 539; Doc. No. 40 at PageID# 545; Doc. No. 42 at PageID# 559; Doc. No. 50 at PageID# 620.) Plaintiff has already amended her complaint.  (*See* Doc. No. 31.)  Indeed, Plaintiff's Amended Complaint was filed after several motions to dismiss had been filed, and she had the opportunity to review and address the challenges those defendants asserted.  (*See* Doc. Nos. 20, 21, 23, 24, 25.)  In her opposition briefs, Plaintiff does not submit any reason why she should be permitted to amend her complaint a second time.  Nor does she attach a proposed second amended complaint.

Because Plaintiff raised her request to file a second amended complaint in her opposition

---

[14] Plaintiff does not seek to re-amend her complaint in her motion to strike Judge Rice for Justice's motion to dismiss.

briefs, the Defendants who object to her filing a second amended complaint do so in their reply briefs in support of their motions to dismiss. [15]  The Defendants who object to amending the complaint for a second time point out that Plaintiff's failure to include the substance of, or attach, a proposed amended complaint violates Fed. R. Civ. P. 15(a) and leaves the Court to speculate as to the contents of any proposed amendment.  (Doc. No. 44 at PageID# 568-69; Doc. No. 46 at PageID# 590-93; Doc. No. 48 at PageID# 603-04; Doc. No. 54 at PageID#641.)  Brouse McDowell, Lisa Whitacre, the Candidate Committees, and Jason Whitacre also argue that amending the complaint would be futile.  (Doc. No. 46 at PageID# 591-93; Doc. No. 48 at PageID# 603-04; Doc. No. 54 at PageID# 641.)

### 1.  Legal Standard

Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend a pleading should be "freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Supreme Court has interpreted this statement to mean that "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'"  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Motions for leave to file an amended complaint under Rule 15(a) are governed by Fed. R. Civ. P. 7(b). *Evans v. Pearson Enters., Inc.,* 434 F.3d 839, 853 (6th Cir. 2006).  Rule 7(b) requires a motion to state the grounds upon which it is made with particularity.  *See Intera Corp. v. Henderson*, 428 F.3d 605, 613 (6th Cir. 2005).

---

[15] The Newspaper Defendants did not file a reply brief nor did they submit an opposition to Plaintiff's request to file a second amended complaint.

### 2.  Discussion

Plaintiff's request for leave to amend fails to supply either a proposed amended complaint or a description of the proposed amendments, leaving the Court without the requisite knowledge of the substance of Plaintiffs proposed second amended complaint.  Plaintiff's request also fails to allege any additional facts or further articulate the basis for the claims asserted in the proposed second amended complaint.  Indeed, it contains no substantive discussion whatsoever.  As a result, this Court has no basis for finding that the interests of justice would be served by granting leave to amend.  *See Roskam Baking Co. v. Lanham Machinery Co.*, 288 F.3d 895, 906 (6th Cir. 2002) (affirming trial court's decision to deny leave to amend a complaint because the court must have knowledge of the substance of a proposed amended complaint to determine whether "justice so requires" and does not abuse its discretion by denying leave where the plaintiff fails to submit a proposed amended complaint or otherwise disclose what amendments plaintiff intends to make); *Evans,* 434 F.3d at 853 (quoting *Confederate Mem. Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993) ("We agree with several of our sister circuits that a bare request in an opposition to a motion to dismiss – without any indication of the particular grounds on which amendment is sought ... – does not constitute a motion within the contemplation of Rule 15(a).") .[16]  Plaintiff's *pro se* status does not relieve her of this obligation to provide the Court with the substance of the proposed amended complaint. *See, e.g.*, No. 5:09-cv-02273, *Glick v. Farm Credit Services of Mid-America, FLCA*, 2010 WL 3118673, at *1 (N.D. Ohio Aug. 6, 2010).  Accordingly, the Court denies Plaintiff's request for leave to amend her complaint.

---

[16] Because Plaintiff did not provide the Court with a description of the proposed amendments to the Amended Complaint, the Court makes no findings on Defendants' futility argument.

### III.      Conclusion

For all the reasons state herein, the Court GRANTS all Defendants' motions to dismiss. (Doc. Nos. 32, 33, 34, 36, 37 & 66.)  Plaintiff's requests for leave to file a second amended complaint is DENIED.  (Doc. Nos. 38, 39, 40, 42 & 50.)  All other outstanding motions are DENIED as moot.  (Doc. Nos. 41, 59 & 67.)  This case is dismissed *with prejudice*.


**IT IS SO ORDERED.**


Date: October 5, 2022

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE